IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY ROSE SCHELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1658 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 22nd day of March, 2016, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 13) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 11) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending applications for disability insurance benefits and supplemental security income on October 3, 2011, and on February 29, 2012, respectively, both alleging a disability onset date of April 11, 2011, due to manic depressive disorder. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on April 10, 2013, at which plaintiff, represented by counsel, appeared and testified. On June 13, 2013, the ALJ issued a decision finding that plaintiff is not disabled. On November 5, 2014, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 28 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). She has at least a high school education and has past relevant work experience as a cashier, fast food cook, laborer at horse farms, stock person, and production worker. While plaintiff continued to work at multiple jobs after her alleged onset date, the reported earnings from those jobs did not rise to the level of substantial gainful activity under the Act. Accordingly, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date.[1]

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although plaintiff has the severe impairments of status-post right shoulder arthroscopy, irritable bowel syndrome, a mood disorder/bipolar II disorder and personality disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

---

[1] For purposes of plaintiff's application for DIB under Title II of the Act, the ALJ found that plaintiff meets the insured status requirements of the Act through December 31, 2016. (R. 20).

AO 72
(Rev. 8/82)

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the light exertional level, but with the following limitations: she should not lift over 10 pounds with the right shoulder; she is limited to simple, routine, repetitive tasks that are not fast-paced and to simple work decisions; she is limited to incidental collaboration with co-workers and the public and can collaborate with a supervisor for only 30 minutes of the work day; and she should be afforded bathroom break three times per day in addition to normal breaks. (R. 24).

Taking into account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including credit checker, order clerk and hand packer. Relying on the vocational expert's testimony, the ALJ found that although plaintiff cannot perform any of her past relevant work, she is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[2] 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 540 U.S. 20 (2003).

Here, plaintiff raises three challenges to the ALJ's findings: (1) the ALJ improperly analyzed and weighed the medical evidence; (2); the ALJ improperly determined plaintiff's residual functional capacity; and, (3), the ALJ erroneously relied on the vocational expert's response to an incomplete hypothetical that failed to account for all of plaintiff's limitations. Upon review, the court is satisfied that the ALJ correctly evaluated the medical evidence and that all of the ALJ's findings, including his residual functional capacity finding, are supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly analyzed the medical evidence. Specifically, she argues that the ALJ improperly discounted the opinions of her treating sources and the consultative psychologist, and ignored entirely evidence of "disabling" GAF scores.[3]

---

[2] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.3d at 432; 20 C.F.R. §§404.1520a and 416.920a.

[3] The Global Assessment of Functioning ("GAF") score considered psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). The latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) no longer includes the GAF scale. See Hughes v. Colvin, 2016 WL 231676 at *2 n.2 (3d Cir., Jan. 20, 2016) (noting that the DSM–5 has abandoned the GAF scale as a measurement tool).

The rules by which the ALJ is to evaluate the medical evidence are well-established under the Social Security Regulations and the law of this circuit. Opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §§404.1527(c) and 416.927(c).

Importantly, the opinion of any physician, including a treating physician, as to the claimant's residual functional capacity, or on the ultimate determination of disability, never is entitled to special significance. 20 C.F.R. §§404.1527(d) and 416.927(d); SSR 96-5p. "The law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Rather, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); see 20 C.F.R. §§ 404.1527(d)(2) and (3) & 416.927(d)(2) and (3); 404.1546(c) and 416.946(c).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. His decision specifically addresses and exhaustively discusses all of the opinions from all of the relevant medical sources, and in particular, the opinions of plaintiff's treating sources, Dr.

Humphreys and Dr. Simmons, and of the psychological consultant, Dr. Newman, and the ALJ adequately explains his reasons for the weight he gave to each. (R. 21-34)

Plaintiff first contends, however, that the ALJ improperly discounted the opinion of the treating psychiatrist, Dr. Simmons, who twice opined on welfare forms that plaintiff is "temporarily incapacitated." (R. 706; 711). The ALJ gave these opinions "little weight" because he found them to be of "limited probative value" and inconsistent with the clinical findings and plaintiff's own reports indicating that her medications had improved and stabilized her mood. (R. 31).

The court finds no error in the ALJ's rejection of Dr. Simmons' opinions of temporary disability. Initially, as already noted, it is for the ALJ alone to make the ultimate determination of disability, and the opinion of a treating physician that a claimant is disabled is not entitled to any special significance. Chandler, 667 F.3d at 361; 20 C.F.R. §§404.1527(d) and 416.927(d). Moreover, Dr. Simmons rendered his opinion of "temporarily incapacitated" on state welfare forms. The Commissioner, however, is to make disability determinations based on social security law, and whether a claimant might be disabled for purposes of welfare eligibility is not binding on the issue of disability under the social security regulations. *See* Griffin v. Commissioner of Social Security, 305 Fed. Appx. 886, 891 (3d. Cir. 2009); 20 C.F.R. §§404.1504 ; 416.904.

Likewise, the court finds no error in the ALJ's decision to accept the opinion of Dr. Santilli, the state agency reviewing psychologist, who concluded that plaintiff has "moderate" limitations in certain areas relating to social interaction,[4] in lieu of the more severe restrictions

---

[4] Dr. Santilli found moderate limitations in plaintiff's ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers. (R. 421).

found by Dr. Newman, the consultative psychologist, who found that plaintiff has "marked" limitations in the ability to interact with co-workers and supervisors. (R. 501).

It is well-settled that "[a]lthough treating and examining physician opinions often deserve more weight than the opinions of doctors who review records ... [s]tate agent opinions merit significant consideration as well." Chandler, 667 F.3d at 361. Pursuant to the Regulations, state agency medical consultants are considered to be "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §§404.1527(e)(2)(i) and 416.927(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §§404.1527(e)(2)(ii) and 416.927(e)(2)(ii); SSR 96-6p.

Here, substantial evidence supports the ALJ's finding of moderate limitations in social interaction as found by Dr. Santilli rather than the marked limitations found by Dr. Newman. As Dr. Santilli noted in her report, Dr. Newman's opinion overestimates the severity of plaintiff's restrictions in making social adjustments and is not consistent with all of the evidence in the record. (R. 422). Dr. Newman himself noted that there was no indication of "formal disturbance of impulse control related to hostility, aggressiveness," and while plaintiff "describes difficulty taking direction," Dr. Newman also observed that her "[s]ocial judgment is sufficient for recognizing what is basically required in social situations and adjusting her behavior accordingly." (R. 500). In addition, in a subsequent psychiatric evaluation report, Dr. Humphreys noted "a significant difference since [plaintiff] has been on medications" and that her friends and family "describe her as more settled, less angry and less agitated." (R. 838).

As the record indicates, the opinion of the state agency psychologist that plaintiff has only moderate limitations in her ability to interact socially is more consistent with the totality of the evidence than that of Dr. Newman, who found marked limitations in that area. Accordingly, the ALJ properly gave the state agency reviewer's opinion greater weight.

Plaintiff's final argument relating to the medical evidence is that the ALJ ignored consistent GAF scores ranging from 45-50 as recorded primarily in the treatment notes of Dr. Humphreys at Glade Run Lutheran Services. (R. 818-840).[5] Again, the court sees no error in the ALJ's treatment of this evidence.

First, contrary to plaintiff's implication, GAF scores in the range of 45-50 are not *per se* "disabling." It long has been recognized that the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have any direct correlation to the disability requirements and standards of the Act, *see* 65 Fed.Reg. 50746, 50764-65 (2000), and courts have emphasized that a claimant's GAF score is not determinative of disability. *See* Gilroy v. Astrue, 351 Fed. Appx. 714, 715 (3d Cir. 2009)(recognizing that GAF scores do not have a direct correlation to the severity requirements of the Social Security mental disorder listings, and determining that a low GAF score is not conclusive evidence of a mental disability); Wind v. Barnhart, 2005 WL 1317040, *6 n.5 (11th Cir. 2005) (noting that the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs).

Accordingly, absent evidence that a GAF score was meant to indicate a limitation in the ability to do work, the score alone is insufficient to establish disability. *See* Clayton v. Colvin, 2014 WL 5439796 (W.D.Pa., Oct. 24, 2014)(J. Fischer). Moreover, a failure to discuss every,

---

[5] Under the DSM-IV, a GAF rating of 41-50 indicated "serious" symptoms or "serious" difficulty in social or occupational functioning.

or even any, GAF score does not constitute error when the ALJ otherwise conducts a thorough analysis of the medical evidence related to the claimant's mental impairments. *See* Ross v. Colvin, 2015 WL 4563258 (W.D.Pa., July 29, 2015)(J. McVerry).

The court is satisfied that the ALJ in this case conducted a sufficient analysis of all of the evidence related to plaintiff's mental health impairments. Although, the ALJ did not explicitly mention any GAF scores in his decision, it is clear that he did consider all of the mental health evidence, including Dr. Humphreys' psychiatric evaluation report and treatment records, as well as the progress notes from plaintiff's therapist at Glade Run, all of which the ALJ discussed at length in his decision. (R. 22; 23; 28-29). Significantly, the treatment records from both Dr. Humphreys and plaintiff's therapist suggest that plaintiff's difficulties in finding and maintaining employment do not stem from an inability to act appropriately due to her mental health impairments but rather from absenteeism and her criminal history. (R. 23). As there is no indication in any of the medical records, all of which the ALJ considered in depth, that plaintiff's low GAF scores result in an inability to do work, the ALJ did not err in failing to explicitly mention them.

It is axiomatic in social security cases that the ALJ must give some indication of the evidence that she rejects and the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. Here, the ALJ reviewed and discussed all of the pertinent medical evidence and thoroughly explained her reasons for giving the weight that she gave to all of the medical source opinions. The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff's next argument is that the ALJ's residual functional capacity ("RFC") finding[6] is insufficient to account for all of plaintiff's limitations arising from her severe impairment of irritable bowel syndrome ("IBS"). In particular, plaintiff contends that the RFC finding fails to an additional limitation which would require her to use the restroom up to 10 times a day, for 10-12 minutes, four times a month. She also argues that the RFC is insufficient to account for her difficulties dealing with supervisors and co-workers.

Upon review the court is satisfied that the ALJ's RFC sufficiently accounts for all of the limitations supported by the record. The ALJ considered plaintiff's IBS and explicitly determined that an allowance for additional bathroom breaks up to 3 times a day is sufficient to accommodate plaintiff's IBS symptoms. (R. 30). The ALJ found plaintiff's testimony regarding more frequent use to be not entirely credible in light of the objective medical evidence which indicates that her condition is well-controlled by her medication regimen.[7] (R. 511-515; 723-731).

---

[6] Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by his impairments. Fargnoli, 247 F.3d at 40; 20 C.F.R. §§404.1545(a)(1); 416.945(a)(1). Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work-setting on a regular and continuing basis, which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§404.1545(a)(3)-(4); 416.945(a)(3)-(4); SSR 96-8p. The ALJ's residual functional capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

[7] Although plaintiff does not challenge explicitly the ALJ's credibility determination in this appeal, the court nevertheless finds no error in the ALJ's evaluation of plaintiff's subjective allegations of her limitations. As required under the Regulations, the ALJ properly considered plaintiff's subjective statements in light of the objective medical evidence as well as all of the other factors relevant to plaintiff's symptoms as set forth in 20 C.F.R. §§404.1529(c); 416.929(c); see also SSR 96-7p. The ALJ did a thorough job in his decision explaining why plaintiff's statements concerning "the intensity, persistence and limiting effects" of her symptoms are "not entirely credible," (R. 24-25; 33-34), and his evaluation is supported by substantial evidence as outlined in his decision.

Plaintiff's argument that additional restrictions in the RFC are necessary to account for marked limitations in her ability to interact with co-workers and supervisors also is not well-taken. As already discussed, Dr. Newman's opinion that plaintiff has "marked" limitations in social interactions is not supported by the objective evidence, and the ALJ's residual functional capacity finding limiting plaintiff to incidental contact with co-workers and the public and collaboration with supervisors for 30 minutes of the workday is more than adequate to address plaintiff's moderate limitations in social functioning as properly found by the ALJ. *See, e.g.,* Parks v. Commissioner of Social Security, 401 Fed.Appx. 651, 655-56 (3d. Cir. 2010) (hypothetical limiting claimant to restricted social interactions adequate to account for moderate limitations in social functioning); Vokes v. Colvin, 2014 WL 457763 *5 (W.D.Pa., Feb. 4, 2014)(hypothetical restricting plaintiff to occupations that are not subject to "close supervision or close interaction with co-workers or the general public" sufficient to account for moderate limitations in social functioning).

The court is satisfied that the ALJ's residual functional capacity finding in this case is supported by substantial evidence as outlined in the decision

Plaintiff's final argument is that the ALJ improperly rejected the vocational expert's responses to hypotheticals advanced by plaintiff's counsel indicating that employment would be precluded if plaintiff was required to be off-task 10% of the work day or to miss work more than 1 day a month, and that no employer would tolerate repeated conflicts with supervisors and co-workers. (R. 71-72).

However, the more restrictive limitations advanced by plaintiff are not supported by the objective evidence for the reasons outlined by the ALJ in his decision and already discussed here. Substantial evidence in the record demonstrates that plaintiff's physical and mental

AO 72
(Rev. 8/82)

- 11 -

symptoms for the most part are well-controlled by medication, (R. 511-515; 723-731; 838-840), and, as the ALJ noted, the treatment notes from plaintiff's therapist suggest that plaintiff's loss of past jobs was attributable more to absenteeism rather than an inability to interact appropriately. (R. 23). As a hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record, the ALJ did not err in rejecting responses to hypotheticals incorporating limitations not supported by the medical evidence. *See* Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004)(ALJ has authority to disregard vocational expert's response to hypothetical inconsistent with evidence).

The court is satisfied that the ALJ's RFC finding, and hypothetical to the vocational expert incorporating that finding, adequately account for all of plaintiff's mental and physical limitations that are supported by the objective evidence. Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)(RFC and hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record). Accordingly, the vocational expert's response to that hypothetical indicating that, despite those restrictions, plaintiff retains the ability to perform the identified light jobs, constitutes substantial evidence supporting the ALJ's finding that plaintiff is not disabled.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

AO 72
(Rev. 8/82)

- 12 -

cc: Christine M. Nebel, Esq.
220 South Main Street
Suite D
Butler, PA 16001

Christy Wiegand
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219